So we'll jump right into the first case. That is Smith v. County of Nassau. And Mr. Bergstein, you have requested three minutes for rebuttal. Correct. So that gives you seven minutes to start. Right. Okay. May it please the Court, Stephen Bergstein for the plaintiff's appellant. Let me jump right to the main issue on this appeal, the grant of qualified immunity. Qualified immunity is not appropriate in this case. Mangino, from 2015, does not address our issue, which is whether an improper purpose beyond the lack of probable cause, but a different collateral objective, such as retribution, is enough to make out an abusive process claim. There are district court cases in the Second Circuit that have gotten around Mangino, post-Mangino, on the basis that most of the cases that lose for abusive process, they fail because the plaintiff argues the improper purpose was the lack of probable cause. But that's not our case here. In our case, the improper purpose is retribution. And we would ask this Court to apply the logic in some of those cases, particularly Rau v. City of New York, Wheeler v. City of Middletown. I mean, isn't every case involving abusive process going to require a collateral objective that's outside the legitimate ends of the process? In other words, probable cause is not going to be the collateral. The lack of probable cause is not going to be the collateral objective. There's always going to be a collateral objective. That is, you know, to retaliate against somebody because they mouthed off or exercised First Amendment rights or, you know, race-based discrimination. Who knows? But what the courts are doing post-Mangino, Mangino is not the final word. What courts post-Mangino are saying is if your improper objective is not the lack of probable cause but another improper objective such as retribution, then you have an abusive process claim. And that's what we have here. But why would lack of probable cause be the collateral objective? That's the way plaintiffs were arguing their abusive process claims over the years. There's an improper objective, proper purpose, which is the lack of probable cause. Those claims fail under Mangino. The lack of probable cause is separate from an improper purpose, right? I mean, an officer could believe unreasonably that he had probable cause and make an arrest. And if that was not what a reasonable officer would think under the circumstances, then there is a lack of probable cause and there is no qualified immunity. But that's not the reason. He doesn't arrest somebody because he has a lack of probable cause. That makes no sense. Well, what the courts were saying pre-Mangino was that retribution, an improper purpose, an improper collateral objective was always the primary element in an abusive process claim.  And it wasn't necessarily defeated by showing a probable cause. Yeah, there's a slippage, but I don't think it's about purpose. There's a slippage between an absence of justification, which is what the older cases talk about, and then it sort of becomes like an absence of, you know, the probable cause would be a justification. And that may be an evolution or even a mistake in the interpretation of abusive process. But, I mean, Mangino, it seems to me, is very clear that it's about the whether probable cause, the absence, sorry, whether the presence of probable cause defeats an abusive process claim. And the answer was sort of we can't tell from New York law and therefore there's qualified immunity. But it was clear in New York at one point. That's what the cases are saying. Yeah, it was clear at one point, but then New York law. There was slippage. And some of the elements of an abusive process claim got sort of fused together. Yeah. But district courts are still ruling in favor of the plaintiff. Well, that's fine. District courts do what they will until they get appealed. And then, you know, we decide whether they're right or wrong. Oh, that's why we're here. But what I'm suggesting is the logic in the district court cases are compelling. Because while the jury may have said the police had arguable probable cause in this case to arrest for trespass, the facts of this case are unique because he wasn't arrested for trespass right away. I think they waited an hour, hour and a half, only until he got on the phone with his lawyer. He reported what his lawyer said about the unlawfulness of the eviction. Then he gets arrested. So a reasonable officer would know that a reasonable officer knew when the jury said this or presumed to have believed this that that's not why he was. He wasn't arrested for trespass. He was arrested because he got on the phone with his lawyer, and he said something to the officer that the officer didn't like. And that's an improper purpose. Why can't we. So what is the difference between a constitutional abuse of process claim and a First Amendment retaliation claim? I know that Mangino treats them as different. And I know that this case was not formulated as a First Amendment retaliation case, probably because the Supreme Court in Nieves says that that doesn't work. If there's probable cause in most cases, that will defeat the First Amendment retaliation claim. But what you said a few moments ago is the improper purpose here was apparently because the plaintiff mouthed off at the officer and was sort of putting up a fuss and calling his lawyer and whatever. But if that's not viable as a First Amendment retaliation claim, why should it be viable if you call it abuse of process? Because this court has always said retribution is an improper purpose. Right. And there's a difference between retribution and mere First Amendment retaliation. Cook v. Sheldon, similar facts to Cook v. Sheldon, right? And so the courts seem to put these different claims into separate boxes. There's First Amendment retaliation, and then there's abuse of process, abusing the criminal process separate and apart from anything that would violate the First Amendment. Do you have any New York appellate division or higher authority, any case in which a New York court upheld an abuse of process claim against a police officer because of an arrest without probable cause? Let me cite to you. With probable cause. Yes. Shields v. City of New York, First Department, 2016. It's in our brief. 141, AD 3rd, 421. Since plaintiffs point to no evidence that defendants were motivated by some collateral objective, the existence of probable cause likewise constitutes a defense to plaintiff's cause of action. Oh, no, wait, wait, wait, wait, wait. That's not what I asked you. That's a case in which the court did not find abuse of process, and I grant you that the court suggests by sort of negative implication that it might be different if the facts were different. But that's not a case in which any – I couldn't find one, and I'm just wondering if you have one, where a New York court upheld a claim for abuse of process where a police officer had probable cause and made an arrest. Shields is as close as I can come to, but Shields strongly suggests that probable cause will not completely defeat such a claim. So we have one appellate case that by negative implication strongly suggests, in your words, that that would be the law, but no case that actually upholds a claim like the plaintiff's here. Well, the district court cases that we cite in our brief, Rau and – Those aren't New York cases. We're supposed to decide what the New York Court of Appeals might do with the – a strong presumption that if there's a consensus in the appellate division, or even if there's like one appellate division case but there's nothing on the other side, maybe that's enough. But we're looking to New York law, which always confused me, by the way. I don't understand why, if this is a federal claim, the law that governs that claim might be different in New York than it is in New Jersey, but that seems to be what we do. We borrow the New York law. That's common in a lot of Fourth Amendment cases. What about Pagliarulo v. Pagliarulo? Do you know that case? No. That hasn't been cited. It talks about the distinction between abusive process and malicious prosecution, and it basically notes that abusive process differs from malicious prosecution in that it's not necessary to show that the action in which the process was used was without probable cause. We make that argument in our brief, that there's a difference between false arrest and abusive process. It's just the way it has shaken out over the years. But I want to draw this Court's attention to it. I guess it implies, and the courts have said, that lack of probable cause is not a complete defense to an abusive process claim. Correct. Why not? I mean, is there any reason why we maybe shouldn't just certify this to the New York Court of Appeals? I was going to suggest that if there's confusion in New York, on this issue, then let's go to the New York State Court of Appeals, because that's what they're for. I will draw this Court's attention to one other case that was recently decided, that's not in our brief, that really lays out these issues. It's Interesia v. City of New York, 2025, Westlaw 3515354. It lays out the history of this claim, what might have gone wrong over the years, pointing out the Supreme Court has always said abusive process is not predicated on the absence of probable cause, and they cite Heck v. Humphrey for this, footnote 5. It's an interesting discussion because it shows you that this line of cases that we're dealing with needs to be straightened out. It's also odd, though, isn't it? I mean, it needs to be straightened out, and we can't get the answer without asking the New York Court of Appeals, what is New York law really in this case? Doesn't that tell you there's qualified immunity? Except you have an obvious improper purpose here, like you did in Rau. Well, the obvious improper purpose happens to be, one, that the Supreme Court has refused to recognize where there's probable cause as a basis for a lawsuit if you label it First Amendment retaliation, which certainly seems odd, right? If we're going to say it doesn't work if you call it First Amendment retaliation, but if you retaliate, if you, the officer, retaliates on the ground of someone exercising their First Amendment rights, we can call that abusive process, invoke state law, which is so confused that we can't figure out what it is without asking the New York Court of Appeals what it is. But nevertheless, there could be no qualified immunity there. Except it wasn't framed as a First Amendment. I understand that, but what sense does that make? What difference does it make is the question. Yeah, what difference does it make? If you arrest someone, and by the way, a separate question, and this is another thing that always puzzles me, what is the process that has been abused? Arresting them, bringing them into custody, making them go to the... an arrest warrant even, something that issues from a court. I mean, this is just, he laid hands on the person and said, you're under arrest, and snapped on cuffs and brought them downtown. But if it's done for an improper reason, then you're abusing the criminal process. The criminal process in the sense of procedure. He'd be free to go otherwise and wouldn't be dragged into the criminal justice system. Thank you. You say that you support certifying the question to the New York Court of Appeals, but that wouldn't change the result for us, would it? I mean, it seems as if the confusion in New York law is what requires us to say that the arresting officer, if we couldn't know the law, the arresting officer couldn't know it either, and therefore qualified immunity is appropriate. Now, that would not change if the Court of Appeals gave us an answer and told us exactly what we don't know what the answer is. It wouldn't change the circumstance faced by the officer when he made the arrest. Because at that time, the law was confused. I guess it would depend on how the New York Court of Appeals frames the issue. If they say it's always been the law, always, that probable cause is not a complete defense. Well, that's what their ruling would mean. Their ruling would mean probable cause has never been a defense. I mean, the absence of probable, whatever, that's what an appellate court's ruling means. It straightens out what the law is and has always been. But that wouldn't change what the arresting officer faced at the time that he made the arrest. Except they knew subjectively it was an improper purpose. Because if they really were serious about arresting our guy, they would have arrested him when he was in the house and not an hour and a half later when he was on the street outside the fence, only after he spoke to his lawyer. Thank you. All right. We reserve time for rebuttal. We'll now hear from Mr. Cuomo. May it please the Court. Matthew Cuomo for the appellees. Your Honor is correct. Nothing that could happen at this point would change the officer's understanding of the law back in 2009 when they made the arrest. Well, you're pointing to Mangino, and I guess Mangino does seem to suggest that. But it always seems to me that Mangino provides a windfall for cops. In other words, what we're basically saying is, well, a cop could have reasonably believed that having probable cause meant that they could do whatever the hell they wanted going forward. And that just seems like an odd basis to give somebody qualified immunity. It would be no less odd to say, well, there was confusion about what the statute of limitations was, and so we're going to give qualified immunity to the officer. Well, Your Honor, I want to back up a little bit to answer that question. We keep talking about an illegal eviction. If you read plaintiff's briefs, it's illegal eviction, illegal eviction. Well, there was no eviction here. Because the jury decided, the detectives made their affirmative burden of proof demonstrating that they had probable cause to arrest this gentleman for criminal trespass. He was excluded from the home. The actual owner. Now, I get all that, but the jury returned a verdict finding abusive process, right? Well, Your Honor. They were instructed on the elements. They were instructed on the elements, and that's where the confusion comes in, Your Honor. This is exactly what Mangino is talking about. You have a situation where the process in this case is the arrest. They had probable cause to issue or to effect that process. And in doing so, they were unaware that they could be breaking the law with respect to abusive process. And that's exactly the case. Well, I guess I'm trying to understand. I mean, jumping a turnstile might be a basis for arresting somebody, but nobody's doing it. Nobody's getting arrested for that these days. And so if the cop says, this person jumped a turnstile, I'm running them in, not because I have probable cause to do so, but for some other reason, because of who they are or what their status is or what they said or looked like. Your view is that no abusive process for that scenario, right? Well, yes, Your Honor, and I think what Your Honor is alluding to is the argument made by plaintiff that because they didn't arrest him while he was in the house, that that demonstrates that they had an improper collateral objective. But it doesn't. And that's what we were talking about before with respect to this started out as a claim that the improper collateral objective was to conceal or cover up an illegal eviction. Well, the determination by the jury demonstrates there's no illegal eviction. So if there's no illegal eviction, what can the collateral purpose be? What can that improper collateral purpose be? Well, isn't there a reasonable inference that a reasonable person could draw that it's when Mr. Smith said, here, talk to my lawyer. He thinks you're behaving illegally. Immediately the officer takes the phone, hangs it up, doesn't talk to the lawyer, and makes the arrest at that point. When the fellow had been trespassing when the officers arrived, left or didn't even get into the house on that occasion, and has been standing on the street talking to the officer and waiting for his wife to pack her or his girlfriend to pack her things before, you know, while all this is going on. And it's only when he mouths off, so to speak, and asserts that this is illegal or my lawyer told me this is illegal, that then he's arrested. And that's exactly what Your Honor was talking about before. It was when he spoke up, when he exercised his First Amendment right. And, indeed, Mr. Brewington, as counsel for the plaintiffs during summation, spoke to that they were shutting him up. He made the argument that this was about his speech, not about a cover-up. So when we get to that, we have this issue that we talk about now, third point in the brief, that when there's probable cause for the arrest, the First Amendment retaliation claim necessarily fails on the law. And the plaintiff is doing a wonderful job trying to avoid the fact that the only collateral objective here was the shutting up. There was no cover-up. So there's no collateral objective. Well, wait, wait. Why isn't shutting him up a collateral objective? That's not a legitimate reason for making an arrest. That's First Amendment retaliation. Right. The legitimate reason for arresting him was that he had committed criminal trespass. Right, because the illegitimate reason, the illegitimate, you just said, the only illegitimate reason would be to shut him up. The only reason why it took place at that moment was to shut him up. Your Honor, if I came across that way, I misspoke. I don't believe that that's what happened here, but that was the jury determination. What we're talking about now is we're going back to this confusion. If Federal judges, if the New York State courts, if the Federal courts could not figure out whether abuse of process is completely barred by the existence of probable cause, in this case, for the actual arrest. But there are many anomalies in the law of qualified immunity. For example, it's always puzzled me why, if there were absolutely crystal clear law, that it was a violation of the New York Constitution and it was a violation of the practices and policies of the police department and the officer could be fired for doing what he did. If there is confusion about whether it is an unconstitutional arrest, that gives qualified immunity. It has always seemed to me to be bananas for the same reason that Judge Sullivan was saying. How, if the officer knows that he shouldn't do this, why are we giving him qualified immunity when, in fact, what he does violates the Constitution? That's weird, but that's the law. Another thing that's weird about this case that puzzles me, the Supreme Court says in the ordinary qualified immunity case, the Federal court has discretion in the order in which it addresses the issues. So what the panel decided not to do in Mangino, you could have decided first this is a violation of the Constitution and then said, but secondly, it was not clear at the time of the officer's action, so qualified immunity, and that would clarify the law. But in this circumstance, since we are borrowing New York State law, we can't do that. We can't clarify it without certification. As Judge LaValle points out, if we certified, first of all, it's not clear we are allowed to certify if it's not a dispositive issue in the case. And if we tried, New York Court of Appeals might say, we don't want to decide this. This isn't a dispositive issue in your case. So how could we ever clarify the law in this circumstance? I'm not certain that you can. So officers will forever have qualified immunity is the city's position here, or the county's position here. The officers will forever have qualified immunity unless some case comes up in New York and is never brought to the federal courts and manages to reach the Court of Appeals or an appellate division that's just like this. New York could clarify the law in a case of their own. Yeah. That may be so, Your Honor. That's the only way this could get done. But I think it's important that we go back and we look at what the application of qualified immunity is in this case. So Judge Brody, in ruling on the 50B motion, she skipped the first step, as you pointed out. And she went right on to the second step, that it was objectively reasonable. And that's the cert. That's the standard. Objectively reasonable for these detectives to believe that their actions were lawful. They had observed. They had facts which gave them. But the jury returned a verdict of $250,000. So I guess that's what I'm having trouble squaring. Your point is that the jury should not have returned a verdict at all. You're correct, Your Honor. Looking at the record, I had argued that it should have never gotten to a jury because the evidence was undeniable that there was probable cause for the arrest. So the jury should not have heard the false arrest claim, which they wound up ruling in favor of the defendants. Based upon that undeniable probable cause and the confusion in the law set forth by this Court in Mangino, Judge Brody should have, on that 50A motion, also applied qualified immunity. This case should have never gone to the jury. This was not a case that a jury should have heard because there was no question of fact for that jury. Mr. Smith, the plaintiff, was the best witness. He was the one who acknowledged that he broke back into the house after he'd been locked out to gain control of the house. He admitted in this case that he had engaged in criminal trespass. So it should have never been with a jury. That leads us back to some of the issues, Your Honor. The abusive process claim was charged as required, but it is an incredibly confusing charge for a jury because a jury is being asked to separate somehow probable cause in this case, because that was the only issue the jury addressed on false arrest, from whether there was a diversion of the process for an improper collateral purpose. And what was argued to the jury was simply that this was time to shut him up, not to gain some collateral advantage, but time to shut him up. That is a collateral advantage, isn't it? No.  I mean, the officer wants this fellow to stop mouthing off, and if he doesn't, he's going to be arrested. Why isn't that, in the ordinary English sense of the word, an abusive process, and in the words of the way you say the jury was correctly charged, isn't that a distortion of the proper purpose of making an arrest, which is to hold someone accountable for criminal conduct? No. I would say in this case it was more of an argument about motive. They got angry. These detectives got angry at Mr. Smith, and they said, we'll show you. That was the argument made by plaintiff in front of the jury. That's an objective that's outside the legitimate ends of process. You don't get to do it because somebody pisses you off. But that's a – I think that's a motive, Your Honor. That's not a purpose. No, that's the third element, I think, of an abusive process claim, and I guess it seems to me the defense is that the second element, which is without excuse or justification, whether that allows probable cause to be a way to short-circuit the whole thing. Well, Your Honor, that whole issue of without excuse or justification highlights the ongoing confusion in the law. There were a series of cases out of this Court speaking – or out of district courts speaking to the idea of whether without excuse or justification undermines the collateral improper purpose. And we're – we still don't have an answer on that to this day, whether you can use the improper – the without excuse or justification. But again, I believe that at most what the plaintiff argued was an improper motive, not an improper collateral objective, and that's what the distinction was made in Savino. What would be an example of an improper justification in your view? The Rao – the Rao case is a perfect example. The detective does an investigation. He has – he develops probable cause that the defendant, who winds up being the civil plaintiff, that the defendant scammed somebody in the neighborhood out of money. Right. So he arrests. And then after the arrest, which is with probable cause, he goes on and he says, well, I'd like to become your partner in this endeavor and solicits a bribe from him. Give me $100,000 to look away and to let you operate with impunity. So why wasn't that the motive? He decided to make this arrest so that he could extort a bribe. Well, you're not sure on the facts of Rao whether he made the arrest to extort the bribe. You're not sure when he decided to do that. But certainly extorting or soliciting a bribe after an arrest with probable cause completely severs the link back to the probable cause. And that's not the case here. There was testimony from the officer's partner that he told me, you know, you see this guy on the street, look what he's doing. That's a violation of the law, isn't it? And the partner says, yeah, it is. You're going to arrest him? Ah, we could probably let him go. But if we arrest him, he'll pay us off to let him go. Would that be an abusive process? Yes, I would agree with you. But why isn't that just his motive for making the arrest in a situation where he had probable cause? And if he just decided that, you know, there's too much of this going on these days, we have to toughen up a little bit on this, and we should arrest people for doing this. Your Honor, I struggle as well with the difference between motive and improper collateral objective. But that's how this Court has formulated the distinction. Motive is no good for abusive process, and improper collateral purpose is what you need to demonstrate. I guess what you're saying ultimately is not so much that there – I would sort of have you if you were arguing that this is legal to do because there's a certain contradiction, and you can't even explain to me what the boundary line is. But your point is if we can't even figure out what the boundary line is, then how do we expect officers to understand that? That's exactly why qualified immunity – qualified immunity is obviously something that raises a lot of passion in the legal community and in the wider community. This is a – It's just kind of odd, though, to say that – I mean, how is an officer to know when they're allowed to pursue a collateral objective that is outside the legitimate ends of process? Well, what I think – what I think the district court's ruling here is, Your Honor, is that it's objectively reasonable for them to not – to understand that there's a potential problem with what they're doing. That's why qualified immunity exists, because they have not been given clear guidance. And I could imagine that you'd like me to give you a great example of that, but I can't. But I'm not sure qualified immunity is designed so that the officer realizes at the time he's taking what he knows to be an illegal act that he has, you know, an out from civil liability. I think it's supposed to be, does the officer know at the time he's engaging in an act that it is improper, that it's unlawful? Well, you have an officer here who has probable cause to arrest. The fact that it didn't happen in the house is of no moment. The crime was committed. The plaintiff actually at the civil trial admitted he committed this crime. It's not the world's biggest crime, but it's still a crime chargeable in New York State. He acknowledged they were aware of facts when they got to that house on October 23, 2009, that this person had likely committed that crime. They had probable cause. So now you're asking an officer or detective to distinguish between, well, I have probable cause, and remember, the case was pleaded as the whole thing, the arrest was a cover-up of an illegal eviction, which completely fails. It's only a last-second pivot to shutting him up for speaking up that we're here. But probable cause is exactly what they had, and it gave them the opportunity to make the arrest legally without. Even if it is for improper purpose? I don't believe it's an improper purpose. Well, I know you don't, but the jury did. I believe it's at most a motive, and the charge is not all that clear, and I think we're all struggling here with the difference between an improper motive and an improper collateral objective. But certainly in this case, based upon the guiding law from this court in Mangino and Tussilo, and as Your Honor pointed out, the Shields case, we still have this confusion, and that is what, as a matter of law, entitles these detectives to the application of qualified immunity. All right. Thank you. We'll now hear from Mr. Bergstein for three minutes at the top. There's another path to affirmance here. The events in this case arose in 2009. That predates Mangino. We argue this in our reply brief, that when we consider qualified immunity, we look at the state of the law at the time the events arose in the case, not at the time of the events, not at the time of the verdict. Are you saying that Mangino is what injected the confusion into the law? Mangino said we have a problem, right? But prior to that. Mangino says that as of 2005, when the events of that case took place, there was confusion in the law. Isn't that right? I don't know if Mangino was that specific. Well, I mean, that's what the issue is, is at the time the officer acts, was there confusion in the law? Well. And the Court said there was, and it said that in whatever year, what is it? 2015. 2015. But there was confusion in the law at that prior time. By 2009, there was no Second Circuit precedential ruling that squarely held that probable cause was a complete defense to an abusive process claim. Right, but we have a Second Circuit ruling that says that in 2005, it was ambiguous or unclear. So, I mean, you need to show that there's something happened between 2005 and 2009, I guess, that made things clearer for you and then became unclear again with Mangino. The other point I want to make is there was colloquy just now about, you know, the law will never be squared away as long as we only apply step two of the qualified immunity and we only say, well, the law's not clearly established, so the officer once again is off the hook. If this Court is inclined to affirm, I would ask this Court to apply step one and clarify this once and for all so in the future, abusive process plaintiffs will know that they can hold the officers accountable. Otherwise, we're going to keep having this problem. You're going to keep having arrests with an improper purpose and if there's some basis for arguable probable cause. Can we clarify it? I mean, it would be dictum, wouldn't it? It wouldn't change the result of the case. It would be dictum. But it would still be binding. Second Circuit. Well, that's what the Supreme Court says. We could do that if it was a federal law issue. But if it's a New York law issue, we can't authoritatively declare New York law. Unless we think we know what the appeals would do. And there's also the sort of problem that can we do that as a panel in the face of Mangino, which has already said there's confusion. And now we're going to say, nah, they were wrong. There really wasn't any confusion because a proper understanding of New York law all along would be something different. That's what district courts have done. I know they're not binding on this court. But the analysis in some of the district court rulings on this issue is thorough. And they gave it a lot of thought. And it's been 15 years or 10 years since Mangino. There's been further development on this. I always thought that the law of the streets was that don't mouth off at the officer because then you're going to be in trouble. I wonder if every time an officer is hovering on the verge of making an arrest and somebody is hassling him and he decides at that moment, okay, well, I'm tired of hovering on the brink. My decision is going to be to exercise my discretion to make an arrest, that now you have an abusive process claim. That helps me. I know it helps you. That helps me. I'm not sure that's a great outcome. That helps me because there are offenses that don't get prosecuted, turnstile jumping, innocent trespassing. But they don't always not get prosecuted. They don't always. There is intervention on various occasions for various reasons. Maybe there's just a crackdown at that particular station because last week somebody jumped the turnstile and stabbed somebody, and that was on the news. And so the cops show up at that station. And then if somebody jumps the turnstile, they arrest them to show that we're not just tolerating this. I mean, there's a lot of stuff that goes on in the exercise of discretion by police that could be characterized in different ways, which probably has something to do. I'm not saying I agree with it, but I have to agree with it. The Supreme Court decided it. That may have something to do with why the Supreme Court, when the case was formed, this exact kind of case came to them, formulated as First Amendment retaliation, and the holding of the case was because there was probable cause to make the arrest. The retaliatory arrest claim fails as a matter of law. And I'm still having trouble understanding why that just gets cabined under, if you call it First Amendment retaliation, it's not a claim. But if you call it abusive process, where the retaliatory motive is suppressing First Amendment rights, then it is a viable claim. If this Court heads in that direction, then it would have to overturn Cook v. Sheldon. Right? And I don't... It's in what direction? If this Court says that this is really a free speech case and retribution is not an improper purpose, then this Court necessarily would have to undermine or overturn Cook v. Sheldon, and this Court doesn't overturn its prior cases that capitulate. Except the ones you want us to overturn, like Mangino. But okay, I get it. Thank you. All right. Well, thank you both. It's certainly an interesting issue. We will reserve decision.